IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROBBIN DIXON, | ) |
|       Plaintiff, | ) ) |
| v. | )   Case No. 19-cv-693-JED-JFJ |
| (1) THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) )   ATTORNEY LIEN CLAIMED ) ) |
|       Defendant. | ) |

## COMPLAINT

Plaintiff Robbin Dixon, for her cause of action against Defendant The Prudential Insurance Company of America ("Prudential"), alleges and states as follows:

### I. Jurisdiction and Venue

1. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*., to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3. Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2), in that the breach took place in this district, and pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II. Parties and Plan

4. Plaintiff is a fifty-seven (57) year-old woman who resides in Tulsa, Oklahoma and within this judicial district.

5. At all relevant times, Plaintiff was employed by CompSource Mutual Insurance

Company ("CompSource") and worked as an Underwriter.

6. CompSource provided short term disability ("STD") and long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan, the CompSource Mutual Insurance Company Short and Long Term Disability Insurance Plan (the "Plan").

7. At all relevant times, Plaintiff was eligible to participate in the Plan, did participate in the Plan, and was a participant in the Plan within the meaning of 29 U.S.C. §1002(7).

8. The STD and LTD insurance coverage applicable to Plaintiff through the Plan was pursuant to a group insurance contract underwritten and issued by Prudential. The Group Contract Number is PVIB-05.

9. Prudential is a corporation having its principal place of business in Newark, New Jersey. At all relevant times, Prudential was and is licensed and authorized to do business within the State of Oklahoma, and it transacts business within this judicial district.

10. The group insurance contract and related certificate of insurance issued by Prudential to CompSource established an "insurer administration" relationship between Prudential and the Plan. Thus, all benefit determinations with respect to Plaintiff's STD and LTD claims were made by Prudential and all monies to be paid to Plaintiff by virtue of her STD and/or LTD claims were to be paid by Prudential.

11. At all relevant times, Prudential was and is a Plan fiduciary within the meaning of 29 U.S.C. §1002(21)(A).

12. The group insurance contract and related certificate of insurance issued by Prudential to CompSource do not contain any provision wherein discretion is expressly reserved to Prudential to determine benefit eligibility or entitlement.

13. Accordingly, a *de novo* judicial review applies to Plaintiff's claim.

### III. Allegations Applicable to All Claims

14. Plaintiff began working for CompSource in July 2010.

15. Plaintiff initiated a claim for STD benefits in November 2016. At the initiation of her STD claim, Plaintiff worked as an Underwriter and her monthly rate of pay was $3,546.23.

16. Plaintiff ceased working due to the debilitating effects of severe osteoarthritis in both knees, degenerative joint and disc disease of the lumbar spine, and related pain.

17. By letter dated December 28, 2016, Prudential unreasonably denied Plaintiff's STD claim following a quick and materially flawed claim handling process.

18. Plaintiff timely appealed Prudential's adverse STD claim decision. Included among the extensive information and records submitted in support of Plaintiff's STD claim was the following:

   (a) a copy of the Social Security Notice of Award dated May 2, 2017 confirming that Plaintiff had been found disabled under the SSA rules effective November 30, 2016;

   (b) a copy of the SSA Disability Determination Explanation dated April 26, 2017 evidencing that the SSA physician and claim adjudicator found Plaintiff disabled due to bilateral end stage osteoarthritis combined with her BMI of 62.6.

19. In response, after having been compelled to undertake a complete and appropriate review on Plaintiff's STD claim, Prudential conceded that, in fact, Plaintiff was unable to perform the material and substantial duties of her regular occupation. Accordingly, by STD claim-related letter dated July 25, 2017, Prudential confirmed that Plaintiff's STD claim was approved for payment for the entirety of the STD benefit period.

20. Because Plaintiff's STD claim appeal also sought the initiation and approval of a claim for LTD benefits, Prudential went on to approve payment of LTD benefits to Plaintiff

commencing February 28, 2017.  By its LTD claim-related letter dated July 25, 2017, Prudential acknowledged Plaintiff was unable to perform the material and substantial duties of her regular occupation.

21.     Thereafter, Prudential periodically requested and received medical records and information pertinent to Plaintiff's LTD claim and entitlement to continuing benefits.

22.     The records from Plaintiff's primary treating physician, Dr. Scott Koch, confirmed Plaintiff's continued complaints of back pain, left arm paresthesia, and lower extremity weakness and swelling.  Dr. Koch's records confirmed that Plaintiff's various conditions remained chronic and unchanged.

23.     On February 27, 2018, Prudential received a Capacity Questionnaire completed by Dr. Koch.  Dr. Koch endorsed significant work capacity limitations, including that Plaintiff could only occasionally stand, walk, sit, and lift up to 10 pounds.  Dr. Koch also restricted Plaintiff to only occasional handling, mousing/keyboarding, and fingering in both hands.

24.     As indicated in the Capacity Questionnaire, Dr. Koch variously explained as follows:

> I do not anticipate that she will ever return to work at her current weight as that is prohibiting her from having surgery to address other issues.
>
> Patient is generally limited in all physical activities due to severe DDD lumbar and cervical and severe arthritis bilateral knees.
>
> These restrictions will be indefinite as long as her weight remains at current level and unable to have surgery.

25.     Upon receipt and review of Dr. Koch's medical records and the Capacity Questionnaire, Prudential continued to find Plaintiff disabled.

26.     In or about September 2018, Prudential began re-reviewing Plaintiff's LTD claim pursuant to an impending "change in definition of disability" whereby Plaintiff's continuing

entitlement to LTD benefits required proof of her inability to perform the duties of any gainful occupation for which she is reasonably fitted by education, training, or experience, i.e., the "any-occupation" definition of disability.

27. During the course of the "re-review," Prudential asked Plaintiff to complete and return an Activities of Daily Living Questionnaire ("ADLQ").

28. Plaintiff provided the requested ADLQ in November 2018. Therein, Plaintiff reported her height and weight as 5'7" and 385 pounds. She identified the medical conditions preventing her from working as: bilateral knee (restricting walking), back pain (restricting sitting), legs & feet swelling (restricting sitting), incontinence, and shoulder pain. Plaintiff also responded to specific questions interposed by Prudential in its ADLQ form.

29. In relation to the "re-review," Prudential also asked Dr. Koch to complete another Capacity Questionnaire. Dr. Koch did so on November 16, 2018, and he reiterated the same opinions and explanations previously provided in February 2018.

30. In January 2019, Prudential conducted what it calls a "Capacity/Clinical" review, which is really just a Prudential nurse summarizing and characterizing his or her take on the claim file information. The "Capacity/Clinical Review" done by Prudential's nurse reflected a dramatic mischaracterization of the claim file information and, more specifically, the activity information in the ADLQ provided in November 2018.

31. In furtherance of the "re-review," Prudential sent a letter dated January 3, 2019 to Dr. Koch and purported to advise him about Plaintiff's activity information from the ADLQ. Prudential misrepresented the content of Plaintiff's ADLQ to Dr. Koch.

32. In its letter to Dr. Koch, Prudential stated "we disagree that [Plaintiff] is limited to occasional sitting, fingering, handling, keyboarding, mousing given her reported activity level."

33. Prudential closed its letter to Dr. Koch by saying "it is our opinion [Plaintiff] would be permanently limited to seated activity, unrestricted sitting, fingering, handling, keyboarding, reaching desk level; frequent reaching overhead; occasional standing, walking, lifting 10#; never crouching, kneeling, squatting, climbing ladders or balancing at heights." Prudential asked Dr. Koch to sign and date the letter if he agreed with Prudential's "summary of the [Plaintiff's] capacity."

34. Unaware that Prudential had misrepresented Plaintiff's activity information from the ADLQ and that Prudential's opinion about Plaintiff's "capacity" was based on false premises, Dr. Koch signed and returned the letter to Prudential.

35. On January 8, 2019, a Prudential-employed vocational specialist said Plaintiff's work experience suggested "transferable skills" such that four (4) occupations existed which Plaintiff could purportedly do given Prudential's "capacity assessments." The four occupations were: (1) Claim Examiner (sedentary strength level with a Specific Vocational Preparation ("SVP") rating of 7); (2) Insurance Customer Service Representative (sedentary strength level with a SVP of 5); (3) Insurance Clerk (sedentary strength level with a SVP of 4) and (3) Customer Service Representative (sedentary strength level with a SVP of 5).

36. Prudential's "employability assessment" (based on a "transferable skills analysis") was materially flawed and irrelevant. The Prudential employability assessment (and transferable skills analysis) made no assessment about whether Plaintiff could, in fact, do the work inherent in the occupations listed based on any specifically-identified training or relevant work experience. Moreover, nothing in Prudential's assessment actually matches the requirement and demands of the listed jobs with Plaintiff's actual abilities (in view of her education, training, or experience).

37. Prudential combined its flawed capacity assessment with its flawed employability

assessment and concluded that Plaintiff was not disabled under an "any occupation" analysis.

38. By letter dated January 15, 2019, Prudential notified Plaintiff that LTD benefits would cease effective February 28, 2019 because the medical information purportedly did not support impairment that prevented her from performing the material and substantial duties of any gainful occupation.

39. Plaintiff appealed Prudential's decision by letter dated June 3, 2019, and submitted additional information and medical records in support of her claim.

40. Plaintiff provided Prudential with a report from a two-day Functional Capacity Evaluation ("FCE") conducted on April 3-4, 2019 by an Occupational Therapist at the St. Francis Hospital Outpatient Rehabilitation Clinic. The FCE report confirmed limitations pertinent to whether Plaintiff was disabled under an "any occupation" analysis.

41. In the Interpretations of Findings and Recommendations sections of the FCE report, the Occupational Therapist opined as follows:

> Ms. Dixon demonstrates limitation of motion and strength of spine and all extremities, to greatest extent lower extremities. Her mobility and balance are impaired to the point that she uses a wheelchair for almost all mobility.
>
> She has multiple chronic medical conditions which are not likely to improve; all of which impact her ability to attend work consistently, tolerate a full-time work schedule, and be independent in a work environment.
>
> Ms. Dixon does not meet the NIOSH criteria for engaging in Sedentary Physical Demands of Work (occasional lifting 10 lb., no frequent or constant lifting, seated work).
>
> She does not demonstrate the physical endurance to tolerate an eight-hour workday, and frequent incontinence could interrupt her ability to engage in full-time work schedule. Her mobility limitations pose a hazard to herself and to others in any workplace setting.

42. As part of her appeal, Plaintiff also submitted additional medical records from Dr. Koch. Those records confirmed Plaintiff's continuing treatment for back pain, knee pain, and left

and right arm paresthesia. The records reflected Dr. Koch's diagnoses of degeneration of the cervical intervertebral disc, degeneration of the lumbar or lumbosacral intervertebral disc, primary osteoarthritis in both knees, and left carpal tunnel syndrome.

43. In response to Plaintiff's appeal, Prudential determined to send Plaintiff's claim file out for a file-review to be done by a Physical Medicine and Rehabilitation/Pain Medicine physician.

44. Dr. William J. Kroski, through MES Peer Review Services ("MES"), conducted the requested file review and provided a report dated June 21, 2019. Dr. Kroski responded to the several questions posed by Prudential. In pertinent part, Dr. Kroski agreed with the standing and walking restrictions endorsed by Dr. Koch, but disagreed with Dr. Koch about Plaintiff's restrictions to sitting and upper extremity use.

45. Dr. Kroski also disagreed with Plaintiff's restriction and limitations as endorsed by the Occupational Therapist at the St. Francis Hospital Outpatient Rehabilitation Clinic.

46. Dr. Kroski never treated or examined Plaintiff

47. In conducting his review on Plaintiff's claim, Dr. Kroski did not contact, or try to contact, Dr. Koch to discuss their differing opinions about Plaintiff's restrictions and limitations.

48. Likewise, in conducting his review on Plaintiff's claim, Dr. Kroski did not contact, or try to contact, the St. Francis Occupational Therapist to discuss any methodological concern he had about the FCE and/or the Occupational Therapist's conclusions about Plaintiff's spine and extremities limitations.

49. Even though Dr. Kroski was provided the Social Security Notice of Award dated May 2, 2017 and the SSA Disability Determination Explanation dated April 26, 2017, he did not explain or reconcile his conclusion about Plaintiff's purported ability to work with the SSA's

findings that Plaintiff was disabled due to bilateral end stage osteoarthritis combined with her BMI of 62.6.

50. By letter dated July 11, 2019, Prudential advised Plaintiff that her appeal was denied. As stated in the letter, Prudential contended that "the information in Ms. Dixon's file does not support impairment that would prevent her from performing material and substantial duties of the gainful occupations" identified in its letter.

51. After receiving Dr. Kroski's report, and prior to denying Plaintiff's appeal by letter dated July 11, 2019, Prudential did not ask Dr. Kroski to contact Dr. Koch or the Occupational Therapist in relation to the respective healthcare professional's contrary conclusions.

52. By letter dated September 12, 2019, Plaintiff submitted a voluntary second appeal and provided additional information and records in support of her claim.

53. In her second appeal, Plaintiff included a letter from Dr. Koch wherein Dr. Koch responded to Dr. Kroski's report. By his letter dated August 20, 2019, Dr. Koch expressed disagreement with almost all of Dr. Kroski's conclusions about Plaintiff's functionality.

54. With respect to standing, Dr. Koch said "[i]t is my opinion based upon [Plaintiff's] severe bilateral osteoarthritis of the knees, the significant pain that she has with standing and ambulation, and the results of her functional capacity exam . . . that she can stand for no longer than 5 minutes at any given time for a maximum of 30 minutes to 1 hour per day."

55. In regard to walking, Dr. Koch said "[b]ased upon [Plaintiff's] severe osteoarthritis of her bilateral knees and her functional capacity evaluation, during which she was only able to walk a total of 25 feet, I believe the maximum that she would be able to walk would be less than 5 minutes at a time for no more than 1 hour a day."

56. In his letter dated August 20, 2019, Dr. Koch opined as follows about Plaintiff's

sitting limitations: "It is my medical opinion that she would only be able to sit for a total of 3 hours in any given 8-hour workday . . . due to the severe arthritic and degenerative changes in her lumbar spine [and because] [p]rolonged sitting in one position exacerbates her pain."

57. Concerning Plaintiff's ability to lift/carry/push/pull, Dr. Koch stated that "I believe that she is not able to lift/carry/push/pull up to 10 pounds occasionally."

58. Dr. Koch also disagreed with Dr. Kroski's assessment that Plaintiff had no restrictions in her upper extremity abilities. Dr. Koch stated:

> [s]he does have carpal tunnel syndrome of the left upper extremity. The pain and numbness from this do limit her ability to use her left hand. Also, her pain in her neck is exacerbated by movements of her upper extremities. I find it highly unlikely that should would be able to use her upper extremities unrestricted for an 8-hour workday."

59. Dr. Koch's overall conclusion was Plaintiff "is incapable of any full-time work."

60. Plaintiff's second appeal also included a *Medical Source Statement of Ability to Do Work-Related Activities (Physical)* completed by Dr. Koch. Pursuant to the "activity" opinions provided by Dr. Koch in the *Medical Source Statement*, Plaintiff cannot perform the requirements of a sedentary-level job.

61. In response to Plaintiff's second appeal, Prudential determined that a "doctor-to doctor" communication between Dr. Kroski and Dr. Koch was appropriate.

62. Significantly, Prudential did not ask Dr. Kroski to communicate with the Occupational Therapist who, after conducting a two-day FCE, had opined that Plaintiff could not do sedentary-level work.

63. In early October 2019, Prudential provided a copy of Dr. Koch's rebuttal letter to Dr. Kroski and asked Dr. Kroski to contact Dr. Koch to discuss the doctors' respective conclusions about Plaintiff.

64. As reflected in Dr. Kroski's report dated October 11, 2019, after the two doctors conferred by telephone, they "did not come to consensus on the recommendations for this claimant to return to work." And Dr. Kroski expressed that there was no change in his opinion about Plaintiff's functionality.

65. Dr. Kroski also prepared a memo dated October 11, 2019, which purported to memorialize the doctors' conversation.

66. Dr. Koch was provided a copy of Dr. Kroski's memo dated October 11, 2019. Dr. Koch responded to the memo the same day. In his written response, Dr. Koch disagreed with some of the representations attributed to him by Dr. Kroski. Dr. Koch reiterated that Plaintiff's "whole clinical picture does support her inability to sustain full time work."

67. Prudential asked Dr. Kroski to review Dr. Koch's additional information and comments. By report dated October 25, 2019, Dr. Kroski indicated that he had done so. Dr. Kroski opined that "there is no new medical information provided that would support the claimant's inability to sustain full time work with the restrictions originally outlined."

68. Prudential determined to make a claim decision based on Dr. Kroski's opinions and it, consequently, denied Plaintiff's second appeal. Prudential notified Plaintiff of its final claim decision by letter dated October 31, 2019. The denial rationale stated therein substantially tracks the views expressed by Dr. Kroski pursuant to his file review.

69. At bottom, as stated by Dr. Kroski in his reports, he simply disagreed with Dr. Koch and the FCE results about Plaintiff's inability to perform sedentary-level work activities.

70. At bottom, Dr. Kroski was simply trying to provide a report to Prudential with content Prudential wished to see.

71. Prudential paid $2,535.00 to MES for the file-review opinions provided by Dr. Kroski.

72. Prudential's reliance on the file review done by Dr. Kroski evidences its unreasonable and unprincipled review.

73. Dr. Kroski's opinions -- based on a file review and without the benefit of seeing the "whole clinical picture" as a treating physician -- are unreliable. Dr. Kroski's opinions are speculation or surmise. They are not substantial evidence.

74. In reaching its LTD claim decision and during the course of its claim investigations prior to, Prudential conducted a skewed and self-interested investigation and evaluation of Plaintiff's claims for disability benefits, failed to apply the terms of the applicable insurance certificate to Plaintiff's claim, mischaracterized record information and cherry-picked record information which might lend support to a claim denial while de-emphasizing or disregarding record information supportive of Plaintiff's LTD claim, and unreasonably relied on a flawed file review done by a physician who never observed or examined Plaintiff.

75. Plaintiff has exhausted her administrative remedies.

### IV. Statement of Claims

#### First Claim

#### ERISA – Improper Denial of Benefits

76. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 75 of this Complaint as though set forth at length herein and further alleges:

77. At all relevant times the terms of the Plan required payment of LTD benefits to Plaintiff due to her debilitating conditions.

78. Prudential's failure to pay LTD benefits to Plaintiff beyond February 28, 2019 is

contrary to the terms of the Plan, and is wrong, unreasonable, and not supported by the substantial record evidence.

79.     Plaintiff seeks a declaration from this Court that she is entitled to the LTD benefits due her under the terms of the Plan, in the amounts and for the duration consistent with the terms of the Plan and certificate of insurance, and an Order that all future disability benefits should be paid pursuant to the terms of the Plan and insurance certificate.

80.     By reason of Prudential's erroneous, wrong, and/or unprincipled claim decision, Plaintiff has been forced to retain an attorney to secure disability benefits due her under the terms of the Plan, for which Plaintiff has and will incur attorney fees and costs.

81.     Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Robbin Dixon demands judgment against Defendant The Prudential Insurance Company of America:

(1)     for a declaration that Prudential wrongfully, erroneously, and/or unreasonably denied her claim for LTD benefits effective February 28, 2019, and that she is entitled to receive the amount of benefits due under the terms of the Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2)     for a declaration that all future LTD benefits be paid or maintained pursuant to the terms of the Plan and related insurance certificate;

(3)     for the costs of this action and Plaintiff's attorney fees, pursuant to 29 U.S.C. §1132(g); and

(4)   for such other and further relief as may be deemed just and proper by the Court.

-14-

        **Respectfully submitted,**

        **SHOOK & JOHNSON, PLLC**

**By:** <u>**s/ Jonathan E. Shook**</u>
    **Jonathan E. Shook, OBA #17343**
    **7420 South Yale Avenue**
    **Tulsa, OK 74136**
    **(918) 293-1122 -** *Telephone*
    **(918) 293-1133 -** *Facsimile*
    **jshook@shookjohnson.com**

    **ATTORNEY FOR PLAINTIFF**